NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0402n.06

Nos. 24-1507/1553/1577

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 15, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| TYJUAN DEVON GRAY, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: MOORE, GRIFFIN, and NALBANDIAN, Circuit Judges.

GRIFFIN, Circuit Judge.

Defendant Tyjuan Gray appeals the district court's judgments in his two criminal cases after pleading guilty to assaulting, resisting, or impeding a prison official in one and to being a felon in possession of a firearm in the other. We affirm those judgments and dismiss his ineffective-assistance-of-counsel claims.

I.

Gray's gun case arose in 2020. Detroit police officers on routine patrol observed a large group of people gathered for a block party when they noticed Gray with a handgun protruding from his pants pocket. They approached him and asked about the gun, and Gray admitted that he did not have a concealed-pistol license. The officers arrested Gray and seized the gun. Gray, a convicted felon, was indicted on a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Over the next four years, his case was delayed by a

combination of the COVID-19 pandemic, the withdrawal and replacement of several attorneys, and competency-related proceedings.

While that case was pending and Gray was in custody, he committed another crime. In 2023, at the Federal Detention Center in Milan, Michigan, Gray met with a nurse practitioner in a closed-door appointment in an exam room to discuss his medications. While seated and without warning, Gray lunged at the nurse and grabbed her throat, forcing her head to hit the wall behind her, with her neck extended across the back of her chair. Gray held the nurse's wrist to prevent her from accessing her radio or pepper spray, and he applied the choke so hard that the nurse urinated on herself. He then let go of her wrist and, while still strangling her, reached for her pants. Other inmates eventually saw what was happening through the door window and intervened. The nurse activated her body alarm and deployed pepper spray, and corrections staff soon responded and neutralized the situation.

The next day, the nurse saw her doctor for a headache, swelling in her neck, and pain in her shoulder. Over the following months, she had numerous medical appointments for these problems. Doctors diagnosed her with a "traumatic incomplete tear of [her] right rotator cuff" and "rotator cuff impingement syndrome." To treat these injuries, she received an ultrasound-guided injection of Kenalog to her affected shoulder. As for Gray, a grand jury indicted him on one count of assaulting, resisting, or impeding a federal officer or employee and inflicting bodily injury, in violation of 18 U.S.C. § 111(a)(1) and (b).

In February 2024, Gray pleaded guilty in both the assault case and the gun case to the charges in the indictments without plea agreements. The district court first sentenced Gray in the assault case. After calculating the advisory Sentencing Guidelines range to be 92–115 months, the court sentenced Gray to an above-Guidelines sentence of 120 months' imprisonment. Next, the

district court (albeit, a different judge) sentenced Gray in the gun case. The court calculated the Guidelines range to be 33–41 months, and it sentenced Gray to a 41 months' imprisonment, consecutive to the sentence in the assault case. These appeals followed.[1]

## II.

We first address Gray's arguments stemming from the assault case, in which he challenges both the procedural and substantive reasonableness of his sentence. We review for both types of reasonableness "under a deferential abuse-of-discretion standard." *Gall v. United States*, 552 U.S. 38, 41, 46 (2007). A district court abuses its discretion when it either "relies on clearly erroneous findings of fact," "improperly applies the law," "uses an erroneous legal standard," or commits a clear error of judgment. *United States v. Hale*, 127 F.4th 638, 640 (6th Cir. 2025); *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020).

## A.

For a sentence to be procedurally reasonable, the district court "must properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence." *United States v. Rayyan*, 885 F.3d 436, 440 (6th Cir. 2018). Gray asserts that his sentence is procedurally unreasonable because the district court (1) erroneously applied a four-point enhancement for bodily injury under U.S.S.G. § 2A2.2(b)(3)(A), (2) failed to consider certain § 3553(a) factors, and (3) erred in several ways when departing above the Guidelines range. We address each contention in turn.

---

[1]Case no. 24-1507 is the appeal from the assault conviction. Case nos. 24-1553 and 24-1577 are consolidated appeals from the gun conviction. (Gray filed two notices of appeal in the gun case.)

1.

Gray first challenges the district court's decision to apply a four-point enhancement for bodily injury under U.S.S.G. § 2A2.2(b)(3)(A). That Guideline enhances a sentence for aggravated assault if the victim suffered bodily injury, increasing in severity based on the "Degree of Bodily Injury." U.S.S.G. § 2A2.2(b)(3). A "Bodily Injury" adds three levels, a "Serious Bodily Injury" adds five levels, and a "Permanent or Life-Threatening Bodily Injury" adds seven levels. *Id.* § 2A2.2(b)(3)(A)–(C). If the severity falls between these tiers, then the injury adds four or six levels, respectively. *Id.* § 2A2.2(b)(3)(D)–(E).

The presentence report recommended adding four points to Gray's offense level because of the victim's shoulder injury, concluding that the injury's severity was between "Bodily Injury" and "Serious Bodily Injury." Over Gray's objection, the district court applied the four-point enhancement under § 2A2.2(b)(3)(D). Gray contends the victim suffered a mere "Bodily Injury," warranting only three points instead of four.

The term "bodily injury" means "physical harm to one's body." *United States v. Bellis*, 2024 WL 1212859, at *1 (6th Cir. Mar. 21, 2024) (collecting sources). For example, a "bloodied lip" qualifies as a bodily injury. *Id.* An injury becomes "serious" when the assault "caused the victim extreme pain, protracted impairment of a body part, or conditions requiring medical intervention"—for example, stab wounds causing "extensive blood loss" and requiring "numerous sutures." *United States v. Flores*, 974 F.3d 763, 765–66 (6th Cir. 2020) (citing U.S.S.G. § 1B1.1 cmt. n.1).

Here, the nurse's shoulder injury falls between these two levels of severity. The injury— diagnosed as a "traumatic incomplete tear of [her] right rotator cuff" and "rotator cuff impingement syndrome"—required medical treatment over several months, including imaging and an

ultrasound-guided injection of medication.  Gray does not dispute the nature of this injury; rather, he asserts that it supported a lesser enhancement.  Yet Gray's cited cases applying a lesser enhancement are distinguishable.  None of those cases involved any medical treatment for the victim, let alone treatment spanning months after the crime.  *See, e.g.*, *United States v. Jackson*, 918 F.3d 467, 487–88 (6th Cir. 2019) (holding that the "bodily injury" enhancement can apply even where the victim does "not actually seek medical attention").  Thus, the district court did not abuse its discretion in applying the four-point enhancement under § 2A2.2(b)(3)(D).[2]

2.

Next, Gray contends that the district court failed to address two arguments he made for a lesser sentence—his mental health and the need to avoid unwarranted sentencing disparities.  That lack of discussion, he asserts, deprived him of an adequate explanation of his sentence, rendering the sentence procedurally unreasonable.  *See Rayyan*, 885 F.3d at 440.  Although the parties disagree on the appropriate standard of review, Gray's challenge fails even if we assume he preserved it and apply the more-stringent abuse-of-discretion standard to the district court's explanation.

Under  18 U.S.C. § 3553(a), in determining "a sentence sufficient, but not greater than necessary," the district court must consider several enumerated factors.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), as well as "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id.* § 3553(a)(6).  When a defendant raises an argument seeking a lower sentence under the § 3553(a) factors, "the

---

[2]Gray's appellate brief references a causation-based argument he made at sentencing—that the victim's shoulder injury "was a preexisting tennis injury."  He does not press that argument on appeal, though, so we do not address it.

record must reflect both that the district judge considered the defendant's argument and that the judge explained the basis for rejecting it." *United States v. Solano-Rosales*, 781 F.3d 345, 352 (6th Cir. 2015) (citation omitted). The district court need only "set forth enough to satisfy the appellate court that [it] has considered the parties' arguments and has a reasoned basis for exercising [its] own legal decisionmaking authority." *United States v. Jones*, 980 F.3d 1098, 1113 (6th Cir. 2020) (citation omitted).

Here, the district court adequately addressed Gray's arguments. First, contrary to Gray's contention, the district court accounted for his "mental health, personal, and educational background." It discussed his "family history," including domestic violence in his upbringing and his father's criminal history, as well as his "mental health concerns," including his diagnoses of bipolar disorder and ADHD. And it addressed Gray's educational background and ambitions, noting that although "he has not completed high school," he has "devote[d] himself to writing" and has "written some novels."

That the district court discussed these topics less extensively than it discussed Gray's criminal history or the nature of the crime is of no moment. "[S]ome factors might prove to be more relevant than others in a given case, and the law thus does not require district courts to provide a ritualistic one-by-one incantation of each factor." *United States v. Coleman*, 835 F.3d 606, 616 (6th Cir. 2016) (citation modified). The district court made clear that, given the circumstances of Gray's assault case, the court was "very concerned" that Gray committed this crime while in custody, that Gray "took advantage" of a person who devoted her career to assisting prisoners, and that Gray caused significant harm to her. In other words, although the district court considered Gray's personal characteristics and history, those factors "pale[d]" in comparison to the nature of Gray's crime. *United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007).

Likewise, the district court adequately addressed the potential for sentence disparities. The district court stated explicitly that it needed "to try to avoid sentencing people differently when their underlying crimes and background are similar" and that it strived "to treat similarly-situated defendants in a similar way." And because the Sentencing Commission "clearly considered" the "avoidance of unwarranted disparities" in establishing the Guidelines themselves, the district court's correct calculation of Gray's Guidelines range "necessarily gave significant weight and consideration to the need to avoid unwarranted disparities." *Gall*, 552 U.S. at 54. Although the court sentenced Gray above that Guidelines range—thus creating a sentence disparity—it explained that decision was due to the seriousness of Gray's crime and the harm he caused. (More on that topic below.) Thus, the district court did not abuse its discretion in explaining its consideration of the § 3553(a) factors.

### 3.

Gray next challenges several aspects of the district court's decision to sentence him above the Guidelines range of 92–115 months to a sentence of 120 months. He asserts that decision was procedurally unreasonable because the district court failed to give notice of its intent to depart upward, failed to explain why it departed upward, and failed to file a written statement of reasons.

### a.

First, Gray, citing Federal Rule of Criminal Procedure 32(h), complains that the district court failed to give adequate notice of its intention to impose an above-Guidelines sentence. Rule 32(h) applies when the district court "depart[s]" from the Guidelines range, *Irizarry v. United States*, 553 U.S. 708, 714 (2008), meaning that the above-Guidelines sentence "results from the district court's application of a particular Guidelines provision, such as . . . § 5, Part K," *United States v. Grams*, 566 F.3d 683, 686 (6th Cir. 2009) (per curiam). Here, the district court departed

under U.S.S.G. § 5K2.2, which permits an upward departure if "significant physical injury resulted," and § 5K2.3, which permits upward departure if the victim "suffered psychological injury much more serious than that normally resulting from commission of the offense." Thus, Rule 32(h) applies. *See Irizarry*, 553 U.S. at 714.

Rule 32(h) requires the court to "give the parties reasonable notice that it is contemplating" a departure "from the applicable sentencing range on a ground not identified . . . in the presentence report or in a party's prehearing submission." Fed. R. Crim. P. 32(h). Gray points out that neither the presentence report nor the government's sentencing memorandum argued for an upward departure, thus, he complains that the district court did not give the required notice.

Yet Gray failed to object on this ground at the sentencing hearing. His vague objection "to the upward departure" did not preserve this specific claim about lack of notice for appellate review. *See United States v. Harmon*, 607 F.3d 233, 237–38 (6th Cir. 2010). Because Gray "failed to object to the adequacy of the district court's notice at his sentencing hearing," we review this claim "only for plain error." *United States v. Meeker*, 411 F.3d 736, 744 (6th Cir. 2005). To meet that standard, Gray must show "(1) error (2) that was obvious or clear, (3) that affected [his] substantial rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (citation modified). Gray falls short.

First, any error here was not obvious or clear. Rule 32(h) requires only "reasonable notice" of the grounds on which the court is contemplating a departure. Whether notice is "'reasonable' under Rule 32 is a context-specific question." *Meeker*, 411 F.3d at 744. If the record contains "cumulative evidence" suggesting the possibility of departure, then less notice is required. *Id.*

Indeed, depending on the circumstances, even notice in advance of the sentencing hearing might not be necessary—"notice at the hearing" may suffice. *See id.* (citation omitted).

Here, the victim's physical and psychological injuries featured prominently in the proceedings leading up to and at sentencing. The court and the parties discussed the victim's physical injury at the change-of-plea hearing. The presentence report detailed the victim's need for medical treatment. The government's sentencing memorandum emphasized the victim's "enduring physical, mental, and emotional trauma." And, at the sentencing hearing, the victim testified about how she has suffered physically and mentally from the assault. Under these circumstances, it is hardly obvious or clear that Gray did not have "reasonable notice" about the possibility of an upward departure for the victim's physical and psychological injuries under U.S.S.G. §§ 5K2.2 and 5K2.3.

What is more, Gray cannot show that any error affected his substantial rights. "An effect on substantial rights is typically established through a showing of an actual effect on the outcome of the case." *United States v. Lopez-Medina*, 461 F.3d 724, 745 (6th Cir. 2006). In the context of a challenge based on lack of Rule 32(h) notice, "a defendant must demonstrate on appeal what advantage he would have gained from receiving prehearing notice, *i.e.*, that factual assertions were false or could have been effectively rebutted." *United States v. Korson*, 243 F. App'x 141, 151 (6th Cir. 2007). Although Gray asserts that the district court's decision to depart "was a surprise at the sentencing hearing," he articulates no reason why the outcome would have been different had he been provided with more advance notice of that possibility. Accordingly, there was no plain error here.

b.

Second, Gray complains that the district court failed to explain its decision to depart upward by five months. He contends the district court's stated reason—that the Guidelines did not adequately account for "the nature of the injury suffered by the victim"—is unsupported because the court already applied a four-point enhancement for bodily injury under U.S.S.G. § 2A2.2(b)(3)(D) and a six-level victim-related adjustment under U.S.S.G. § 3A1.2(c)(2).

But Gray ignores the victim-impact testimony and how that testimony affected the district court's decision. The victim explained that the assault resulted in both "physical and mental" injuries that continue to affect her personally and professionally. For her physical injuries, she explained that she has "chosen not to have surgery" on her shoulder because she does "not want any outward scars related to this assault." As for her mental injuries, she told the court that, nearly a year after the assault, she continues to have trouble sleeping at night. In her words: "I wake up to hands on my throat, the smell of his breath and the rage in his voice."

The district court made clear that the victim's testimony bore heavily on its consideration of an appropriate sentence. It stated that the victim's testimony "shows that the type of offense here was extremely violent and damaging to the victim." It further noted that the victim's "long-term consequences" from the assault "go far beyond simply the physical injury that occurred." Shortly before announcing the sentence, the district court stated: "[F]or that reason[,] I think there are factors here that are not necessarily adequately considered under the sentencing guidelines."

"When imposing a procedurally reasonable sentence, the district court must adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *United States v. Mitchell*, 107 F.4th 534, 542 (6th Cir. 2024) (internal quotation marks and emphasis omitted). A "minor" departure requires less justification than a "major" one does.

*Gall*, 552 U.S. at 50. Here, given the victim-impact testimony and the district court's subsequent comments, the district court adequately explained its decision to depart upward by five months.

c.

Third, Gray complains that the district court never publicly filed a written statement of reasons about its departure. But no rule requires such a filing. True, 18 U.S.C. § 3553(c)(2) obligates the district court, when sentencing outside the Guidelines range, to explain its decision "in a statement of reasons form issued under section 994(w)(1)(B) of title 28." But § 994(w)(1), in turn, simply requires that the sentencing court submit a statement of reasons "to the [United States Sentencing] Commission"—it does not require that the statement be filed on the public docket. The government's brief accurately quotes from the district court's non-public statement of reasons: "The court determined that the victim's injuries were more significant than previously described and a sentence at the top of the guideline range was not sufficient to address the seriousness of the offense." That explanation aligns with the explanation given at the sentencing hearing. The district court therefore satisfied its obligation under 18 U.S.C. § 3553(c)(2).

B.

In two paragraphs at the end of his brief, Gray challenges the substantive reasonableness of his sentence. A sentence is substantively unreasonable if it is "too long" because "the court placed too much weight on some of the § 3553(a) factors and too little on others." *Rayyan*, 885 F.3d at 442. When reviewing the substantive reasonableness of a sentence outside the Guidelines, we consider "the degree of variance" from the Guidelines. *United States v. Zobel*, 696 F.3d 558, 569 (6th Cir. 2012) (quoting *Gall*, 552 U.S. at 47). Although we do not presume reasonableness for an above-Guidelines sentence, we do give "due deference to the district court's conclusion that the sentence imposed is warranted by the § 3553(a) factors." *Id.* (citation modified).

Gray asserts no independent reasons why his sentence was substantively unreasonable; rather, he merely references his procedural assertions already addressed: that the district court "failed to fully analyze several of the 18 U.S.C. § 3553 factors," "did not address the need to avoid unwarranted sentencing disparities," and "failed to provide a written statement of reasons." Even if Gray's perfunctory argumentation on this point did not forfeit his substantive-reasonableness challenge, *see United States v. Persaud*, 866 F.3d 371, 385 (6th Cir. 2017), his challenge would fail on the merits for the reasons already discussed. The district court adequately weighed the § 3553(a) factors and justified its modest upward departure based on both the nature of this violent offense in a custodial setting and the victim's serious and ongoing harm. Accordingly, the district court did not abuse its discretion by departing upward by five months and sentencing Gray to 120 months' incarceration in his assault case.

### III.

We next address Gray's arguments stemming from the gun case. Gray contends that the district court erred by (1) finding him competent to proceed, (2) not informing him of a particular consequence of his plea, (3) failing to consider certain arguments at sentencing, and (4) imposing a substantively unreasonable sentence. He further asserts that he received ineffective assistance of counsel. We address each argument in turn.

### A.

First, Gray argues that the district court erred in finding that Gray was competent to proceed, and he complains that the district court failed to hold a "substantive competency hearing." In June 2022, the district court granted an oral motion by Gray's counsel to have Gray's competency evaluated. After the evaluation, the parties and the court received a competency report, and the court held a short competency hearing. The court confirmed that Gray's lawyer

had reviewed the report with Gray, and Gray told the court that he had no questions about it. The court then stated that it "has read the report, which is 19 pages single spaced and very thorough, and the Court has witnessed Mr. Gray's behavior here in court, and the Court finds that he is competent to proceed and stand trial in this case." Gray's counsel neither objected nor inquired further about competency, and the hearing proceeded to another topic before adjourning.

Gray now challenges both the competency finding itself and the decision not to hold a more extensive hearing. Competency is a factual determination, which we review for clear error. *United States v. Dubrule*, 822 F.3d 866, 875 (6th Cir. 2016). A factual finding is clearly erroneous only when "it is against the clear weight of the evidence" or when we are "left with the definite and firm conviction that a mistake has been committed." *Id.* (citation omitted). And we review the district court's decision not to hold an evidentiary hearing on competency for an abuse of discretion. *See United States v. Heard*, 762 F.3d 538, 541 (6th Cir. 2014).

18 U.S.C. § 4241 and its neighboring provisions set the procedure for determining competency. In advance of a competency hearing, the district court "may order that a psychiatric or psychological examination of the defendant be conducted" and that a report be provided to the court. *Id.* § 4241(b). At the hearing, the defendant "shall be afforded an opportunity to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." *Id.* § 4247(d); *see also id.* § 4241(c). At the end of the hearing, the district court must determine whether "a preponderance of the evidence" shows "that the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." *Id.* § 4241(d).

The district court followed these procedures. Although the hearing was held at the request of Gray's lawyer, neither Gray's lawyer nor Gray himself mentioned on the record that they had any evidence of incompetency to present. *See id.* § 4247(d); *see also id.* § 4241(c). Indeed, their lack of evidence, objections, or questions suggests that both Gray's lawyer and Gray himself agreed with the report's findings, or at least chose not to challenge them. Under such circumstances, the district court's finding of competency—based on the "thorough" report and its own observations—was not clearly erroneous. And its decision not to take additional evidence (that Gray never offered) was not an abuse of discretion.

B.

Next, Gray complains that his guilty plea was not knowing and voluntary because the district court did not specifically inform him that entering an unconditional plea waived his right to challenge the district court's denial of his motion to suppress.

Early in the proceedings, Gray moved to suppress the gun and his statements made to the officers. The district court held a hearing on the motion and denied it with respect to the gun. Gray tried to immediately appeal that decision, but we dismissed that appeal as premature. Several months later, Gray entered an unconditional guilty plea without a plea agreement.

Because Gray did not reserve "the right to have an appellate court review an adverse determination of a specified pretrial motion," Fed. R. Crim. P. 11(a)(2), his unconditional guilty plea waived his right to appeal the denial of a suppression motion, *United States v. Vasquez-Martinez*, 616 F.3d 600, 604–05 (6th Cir. 2010). Gray now asserts that his guilty plea is invalid because the district court did not inform him of this consequence of his unconditional guilty plea when he entered it.

To satisfy constitutional demands of due process, a guilty plea must be entered knowingly, voluntarily, and intelligently. *See Bousley v. United States*, 523 U.S. 614, 618–19 (1998) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)); *see also United States v. Pitts*, 997 F.3d 688, 701 (6th Cir. 2021). Federal Rule of Criminal Procedure 11 helps ensure that pleas meet that constitutional standard. *United States v. Jones*, 53 F.4th 414, 417 (6th Cir. 2022). Under that rule, before the district court accepts a guilty plea, the court "must inform the defendant of, and determine that the defendant understands" certain consequences of the plea during the plea colloquy. Fed. R. Crim. P. 11(b)(1). Here, because Gray "did not object to the plea colloquy, we review for plain error." *Pitts*, 997 F.3d at 701; *see also United States v. Presley*, 18 F.4th 899, 903 (6th Cir. 2021) (explaining that plain-error review applies to both "constitutional and rule-based challenges" to guilty pleas).

Gray fails to satisfy even the first element of the plain-error standard because the district court did not err. *See Vonner*, 516 F.3d at 386. Rule 11 does not require that district courts advise defendants entering an unconditional guilty plea that such a plea waives the right to appeal pre-plea rulings. The closest Rule 11 comes to such a requirement is its requirement that the district court advise the defendant about "the terms of *any plea-agreement provision* waiving the right to appeal . . . *the sentence*." Fed. R. Crim. P. 11(b)(1)(N) (emphases added). Yet that provision applies only when there is a plea agreement (here, there was none) and when a defendant stands to lose the right to appeal a future, post-plea decision (the sentence), not a past, pre-plea one (like a decision on a motion to suppress). To preserve pre-plea decisions for appeal, Rule 11(a)(2) puts an "affirmative duty on the defendant" to make the plea conditional. *United States v. Martin*, 526 F.3d 926, 932 (6th Cir. 2008) (citation omitted). The district court is under no obligation to advise the defendant about that affirmative duty.

Indeed, we have previously rejected arguments like Gray's, holding pleas to be knowing, intelligent, and voluntary even when the district court did not advise the defendant that an unconditional guilty plea waived the right to appeal decisions on motions to suppress. *Vasquez-Martinez*, 616 F.3d at 604–05; *Carter v. Winn*, 2021 WL 1100496, at *2 (6th Cir. Jan. 7, 2021). Gray fails to even cite these on-point cases, let alone distinguish them, despite the government citing them. Accordingly, the district court did not plainly err by not advising Gray that his unconditional guilty plea would waive his ability to appeal the denial of the motion to suppress.

C.

Gray next makes two arguments that he received ineffective assistance of trial counsel. He asserts that his lawyer failed both to contest the district court's competency finding and to secure a conditional plea. But unless counsel's "ineffectiveness is apparent from the record," we typically decline to address ineffective-assistance claims on direct appeal. *United States v. Burrell*, 114 F.4th 537, 548 (6th Cir. 2024) (citation omitted).

Whether Gray's counsel was ineffective on either ground is not apparent. At minimum, an ineffective-assistance claim requires a showing of prejudice—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). For the competency finding, Gray admits that the record here lacks evidence to challenge "the report's finding of competence." And Gray fails to show that, had his lawyer advised him about his waiver of appeal rights, that "he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

Further, Gray does not even attempt to show any reasonable probability that he would have prevailed on an appeal of the denial of his motion to suppress the gun had his lawyer secured a

conditional plea. The police officers saw the handle of Gray's handgun protruding from his pocket, and in Michigan, concealed carrying of a firearm is presumptively unlawful. *See United States v. Galaviz*, 645 F.3d 347, 356 (6th Cir. 2011). Michigan law thus permitted the officers to "approach the suspect and ask for proof of a [concealed pistol license]," *People v. Williams*, 2024 WL 1684856, at *8 (Mich. Ct. App. Apr. 18, 2024), *appeal denied*, 10 N.W.3d 281 (Mich. 2024) (order), which Gray admitted he did not have.

At this stage, any prejudice Gray suffered from his counsel's alleged mistakes is not apparent. We thus decline to evaluate the merits of the ineffective-assistance-of-counsel claims, which are better addressed in proceedings under 28 U.S.C. § 2255.

D.

Gray next asserts that his 41-month sentence on the firearm conviction is procedurally unreasonable for two reasons: the district court failed to address arguments for a lower sentence, and it failed to justify running the sentence for the gun possession consecutive to the sentence in his assault case.

1.

First, as he did in the assault case, Gray contends that the district court failed to address two arguments for a lesser sentence—his mental health and sentencing disparities. As in the assault case, the district court adequately addressed both topics at sentencing here.

For mental health, the district court discussed Gray's personal background, observing that he has not "had an easy path." During its discussion of Gray's other criminal conduct—most significantly, the assault on the nurse—the district court acknowledged that Gray may not have been in the "right mind" at the time of the incident. But as the district court stated, "extreme mental distress" does not excuse "touch[ing]" or "threaten[ing]" another person. And the district court

further made clear that it considered Gray's mental-health concerns—as it pronounced the sentence, it ordered that Gray undergo a "psychological or psychiatric evaluation" and that he "participate in a mental health program" at the prison. That the district court did not discuss Gray's mental health as extensively as other topics at sentencing does not render the sentence procedurally unreasonable. *See Coleman*, 835 F.3d at 616; *Bridgewater*, 479 F.3d at 442.

As for sentencing disparities, the court explicitly considered "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." And Gray's within-Guidelines sentence necessarily accounted for the need to avoid sentencing disparities. *See Gall*, 552 U.S. at 54. Thus, the district court adequately addressed both arguments.

2.

Second, Gray challenges the decision to impose a sentence consecutive to, as opposed to concurrent with, his sentence in the assault case. District courts have discretion to impose consecutive terms of imprisonment, and when doing so, they must consider "the factors set forth in section 3553(a)." 18 U.S.C. § 3584(b); *see also United States v. Morris*, 71 F.4th 475, 483 (6th Cir. 2023). But a district court need not separately analyze the § 3553(a) factors for "the concurrent or consecutive nature of the sentence" and for the total sentence length. *United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009). Rather, a district court may "intertwine[]" those determinations in a single discussion of the factors. *United States v. King*, 914 F.3d 1021, 1026 (6th Cir. 2019) (citation omitted).

Here, the district court adequately explained its decision to impose a consecutive sentence. After analyzing the § 3553(a) factors, the district court announced the consecutive sentence, explaining that "a lesser sentence would not be reasonable" because "it would not adequately

account for what [Gray has] done." The district court made clear that Gray's "escalating criminal conduct"—committing a gun offense, then assaulting a nurse while in custody for that offense—necessitated a harsher sentence to protect society from Gray's "menacing conduct." As the district court explained: a concurrent sentence "would mean that [Gray] would be returning home sooner and [the court] would have less confidence that [he] would be returning home better." Thus, the consecutive was not procedurally unreasonable.

## E.

Finally, in two sentences in his brief, Gray argues that his sentence is substantively unreasonable. Gray forfeited this perfunctory argument. *See Persaud*, 866 F.3d at 385. And even if he had not, this argument would fail on the merits. A within-Guidelines sentence is entitled to a presumption of substantive reasonableness. *Harmon*, 607 F.3d at 240. Here, there is no reason to doubt that presumption because the district court amply justified its sentence at the top of the Guidelines range. Factors such as the dangerousness of Gray's offense (he illegally possessed a gun at a crowded block party), Gray's other criminal conduct (including the sexual assault of the prison nurse, as well as a prior incident of criminal sexual conduct against a 14-year-old minor victim), and Gray's apparent resistance to the deterrent effects of incarceration (having previously received "serious punishments" for his "numerous felony convictions"), all supported the sentence. The within-Guidelines, 41-months-long, consecutive sentence was not substantively unreasonable.

## IV.

For these reasons, we affirm the district court's judgments in both underlying criminal cases. We dismiss without prejudice Gray's ineffective-assistance-of-counsel claims in case nos. 24-1553 and 24-1577.